UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

AMY CONNELLY, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-64
)
MICHAEL FERGUSON, )
individually and in his official capacity as )
a police officer for the City of St. Albans, )
Vermont, )
)
Defendant. )

**OPINION AND ORDER GRANTING DEFENDANT FERGUSON'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 22)

Plaintiff Amy Connelly brings this action against Defendant Michael Ferguson, individually and in his official capacity as a police officer for the City of St. Albans, Vermont, alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983 as well as state law tort claims arising from a physical altercation that occurred on March 14, 2019 while she was detained at the St. Albans Police Department.[1]

Pending before the court is Defendant Ferguson's motion for summary judgment. (Doc. 22.) He contends that he was not present at the time of the incident giving rise to Plaintiff's causes of action and that, as a result, he is entitled to judgment as a matter of law. Defendant Ferguson also states that he is entitled to judgment as a matter of law on

---

[1] Plaintiff originally named the City of St. Albans, Vermont; Gary Taylor, individually and in his official capacity as Chief of Police for the City of St. Albans, Vermont; and Jason Lawton and Zachary Koch, individually and in their official capacities as police officers for the City of St. Albans, Vermont, as Defendants. However, all Defendants other than Defendant Ferguson have since been dismissed from this action and are now Defendants in a separate case. (Doc. 42.)

the basis of qualified immunity. Plaintiff opposes the motion, asserting that there are disputed issues of material fact.

Plaintiff is represented by Albert S. Fox, Esq. and Evan B. Chadwick, Esq. Defendant Ferguson is represented by Brian P. Monaghan, Esq.

I. **Procedural Background.**

On May 4, 2020, Plaintiff filed her Complaint, alleging both failure to intervene and excessive use of force in her first cause of action against Defendant Ferguson in violation of her "protected constitutional rights . . . [and] privileges and immunities secured to her by the Fourth, Fifth[,] and Fourteenth Amendments to the United States Constitution" pursuant to § 1983. (Doc. 1 at 7, ¶ 33.) Plaintiff's second through fifth causes of action are state law tort claims of assault, battery, intentional infliction of emotional distress, and gross negligence against Defendant Ferguson.[2]

On September 29, 2020, Defendant Ferguson filed his answer to the Complaint. On February 10, 2021, the court entered a stipulated discovery and pleading schedule/order. Initial disclosures were provided by both Plaintiff and Defendant Ferguson on February 23, 2021. On March 23, 2021, Plaintiff served her first set of interrogatories and requests for the production of documents to Defendant Ferguson, who responded on April 22, 2021. On March 23, 2021, Defendant Ferguson served interrogatories and requests for the production of documents to Plaintiff. On May 6, 2021, Defendant Ferguson served requests to admit to Plaintiff. Plaintiff did not respond to Defendant Ferguson's interrogatories, requests for the production of documents, or requests to admit.

On June 22, 2021, Defendant Ferguson filed the pending motion for summary judgment. On August 12, 2021, Plaintiff opposed Defendant Ferguson's motion, and on

---

[2] The sixth cause of action, alleging that former Defendants City of St. Albans and Taylor "negligently failed to screen, control, train, supervise[,] and discipline police officers under their command," is not applicable to Defendant Ferguson and is no longer before the court. (Doc. 1 at 9.)

2

August 26, 2021, Defendant Ferguson filed his reply, at which point the court took the pending motion under advisement.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (internal quotation marks omitted). There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotation marks omitted) (alteration in original). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the

3

existence of [an] element at trial." *Id.* at 166-67 (internal quotation marks omitted) (alterations in original).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita*, 475 U.S. at 586). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). However, if the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Id.* at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor*, 609 F.3d 537 at 545 (internal quotation marks and emphasis omitted).

### B. Plaintiff's Abandonment of Her Second Through Fifth State Law Causes of Action.

In Defendant Ferguson's motion for summary judgment, he addresses each of Plaintiff's causes of action and explains why he contends each must be dismissed. On July 22, 2021, the court granted Plaintiff's motion for an extension of time to file her opposition. When Plaintiff did so, on August 12, 2021, she did not address Defendant Ferguson's arguments seeking dismissal of her state law tort causes of action.

"[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). "[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition[,]" a practice that has been "expressly approved . . . in the context of summary judgment motions[.]" *Colbert v. Rio Tinto PLC*, 824 Fed. App'x. 5, 11 (2d Cir. 2020); *see also Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340

(E.D.N.Y. 2006) (holding that "[b]ecause plaintiff's opposition papers did not address defendants' motion for summary judgment on [a] claim, [that] claim is deemed abandoned and summary judgment could be granted on that basis alone").

The Second Circuit has observed that:

> "[p]leadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them." And insofar as summary judgment "is known as a highly useful method of narrowing the issues for trial," it follows that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses."

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson*, 766 F.3d at 196) (internal footnotes omitted) (alteration in original). Summary judgment is thus an opportune phase of a case in which to "include a finding of abandonment of undefended claims or defenses." *Jackson*, 766 F.3d at 198.

While Plaintiff captions a section of her opposition "Officer Ferguson committed Battery against Plaintiff" (Doc. 32 at 6), she does not address in any substantive sense her claim of battery and she also does not address Defendant Ferguson's arguments seeking dismissal of her state law tort causes of action for assault, intentional infliction of emotional distress, and gross negligence.

Under *Jackson*, by failing to respond to Defendant Ferguson's dismissal arguments, Plaintiff has abandoned her state law tort causes of action against him. *See Curry v. Keefe*, 2021 WL 1087444, at *6 (D. Vt. Mar. 22, 2021) (finding that a claim under the Vermont Constitution and state law tort claims of assault, battery, and intentional infliction of emotional distress had been abandoned where defendants "explicitly moved for summary judgment on each of these claims" but plaintiff did not oppose defendants' arguments in his briefing).

Plaintiff also appears to allege negligent infliction of emotional distress for the first time in her opposition to summary judgment. Her Complaint, however, does not contain this cause of action. "[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion[.]" *Thomas v. Egan*, 1 Fed.

App'x. 52, 54 (2d Cir. 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim."); *see also Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 236 (E.D.N.Y. 2017) (same); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) ("this Court will not consider claims not pleaded in the [c]omplaint"). This cause of action is therefore not properly before the court.

For the reasons stated above, Defendant Ferguson's request for summary judgment with respect to the Complaint's second through fifth causes of action is GRANTED.

### C.     Plaintiff's Failure to Respond to Defendant Ferguson's Requests to Admit.

Defendant Ferguson served requests to admit to Plaintiff on May 6, 2021. Plaintiff failed to respond to them and offers no excuse for her failure to do so. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." *Id.* The stipulated scheduling order permits Plaintiff and Defendant Ferguson to serve requests to admit until January 7, 2022, but it does not grant additional time for responses. Plaintiff concedes in her statement of disputed facts that she has not responded to Defendant Ferguson's requests to admit.

"A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). It is "well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive." *Healthfirst, Inc. v. Medco Health Solutions, Inc.*, 2006 WL 3711567, *4 (S.D.N.Y. Dec. 15, 2006) (internal quotation marks omitted). "Notwithstanding the automatic effect of the time limitations in Rule 36(a), the court is given some discretion in Rule 36(b) to make exceptions in

appropriate circumstances." *Id.* Because Plaintiff has not requested additional time to respond, Defendant Ferguson's requests to admit are deemed admitted.

### D. The Undisputed Facts.

On March 14, 2019 at approximately 7:55 p.m., officers from the St. Albans Police Department responded to a reported assault by Plaintiff on staff at Shooter's Saloon in St. Albans, Vermont. Defendant Koch reported to Shooter's Saloon and spoke with Plaintiff. He believed Plaintiff was heavily intoxicated. Plaintiff admits that she had consumed alcohol but denies that she was heavily intoxicated. Defendants Lawton and Ferguson also reported to the scene.

Defendant Ferguson was a member of the "Field Training" program at this time, having graduated from the Vermont Police Academy approximately three months prior in December 2018. (Doc. 22-2 at 2, ¶ 4.) Defendant Lawton was Defendant Ferguson's Field Training Officer. Defendant Ferguson was assigned his own patrol vehicle that evening and he "did not arrive at Shooter's Saloon until [Defendant] Koch was in the process of loading Ms. Connelly into his cruiser to take her back to the police station." *Id.* at ¶ 6. Defendants Lawton and Ferguson interviewed patrons and the owner of Shooter's Saloon. Defendant Koch transported Plaintiff to the St. Albans Police Department for processing and placed her into a holding cell. At the time, she was in handcuffs.

While inside the holding cell, Plaintiff kicked the door, which "caused it to become partially wedged open." *Id.* at ¶ 10.[3] "[Defendant] Ferguson, who had been working at the computer in the patrol room, had moved from the computer and was talking with [Defendant] Lawton [still in the patrol room] at the time Ms. Connelly was kicking the door." *Id.* at 3, ¶ 12. "[Defendant] Ferguson returned to his paperwork because [Defendant] Lawton said he would handle the situation with Ms. Connelly[.]" *Id.*

---

[3] Plaintiff disputes this, however, a video of the holding cell shows her seated in the holding cell, violently kicking the door. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (determining that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by [video evidence in] the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" as it should "view[] the facts in the light depicted by the videotape").

at ¶ 13. Defendant Lawton walked to the holding cell to address Plaintiff while Defendant Ferguson "followed the instruction and went back to the computer to resume typing." *Id.* at ¶ 14. "The computers in the patrol room are approximately 25 feet from the holding cell where Ms. Connelly was kicking the door." (Doc. 22-2 at 3, ¶ 15.)

Upon his arrival at the holding cell, Defendant Lawton "opened the holding cell door and ordered Ms. Connelly to stop kicking [it]." *Id.* at ¶ 17. Plaintiff "stood up and stepped toward [Defendant] Lawton." *Id.* at 4, ¶ 18. Defendant Lawton "ordered Ms. Connelly to sit down" and she refused. *Id.* at ¶ 19. Defendant Lawton then "pushed Ms. Connelly back into the holding cell and onto the bench." *Id.* at ¶ 20. Plaintiff arose and moved towards Defendant Lawton. *Id.* at ¶ 21. It is disputed whether Plaintiff kicked Defendant Lawton in his right shin. Defendant Lawton "used his right hand and applied what he characterized as a distraction strike to Ms. Connelly's face." (Doc. 22-2 at 4, ¶ 22.) In the video recording, Defendant Lawton strikes Plaintiff in the face with a closed fist. Defendants Lawton and Koch then brought Plaintiff down to the floor in a "controlled takedown" and "applied leg shackles to her legs." *Id.* at ¶ 23. Plaintiff contends that the phrases "distraction strike" and "controlled takedown" are not proper characterizations of the foregoing events, but she does not dispute the underlying facts. The interaction, from the moment of Defendant Lawton's first physical contact with Plaintiff until the moment she was brought to the floor, lasted approximately sixteen seconds.

Defendant Ferguson "was not present immediately outside of the holding cell during [Defendant] Lawton's contact with Plaintiff[.]" *Id.* at 7, ¶ 37. "At the time of the takedown, [Plaintiff] was in the holding cell, [Defendant] Koch was in the doorway, and [Defendant] Ferguson was outside of the holding cell." *Id.* at 5, ¶ 26. More specifically, Defendant Koch was "[located] in the doorway between [Plaintiff] and [Defendant] Ferguson." *Id.* at ¶ 27. Defendant Ferguson had no contact with Plaintiff "until after [she] was already on the floor." *Id.* at 8, ¶ 39.

### E. Whether Defendant Ferguson Used Excessive Force.

Defendant Ferguson contends that he "has no liability for use of excessive force for the simple fact that [he] had no contact with Ms. Connelly until after she was on the floor, when he placed his hand on her back." (Doc. 22-1 at 16.) In Plaintiff's first cause of action, she alleges Defendant Lawton shoved her and struck her in the face. Plaintiff further asserts she was thrown "head first into the floor[,]" including by Defendant Ferguson. (Doc. 1 at 4, ¶ 19.) She contends that this "use of force was without cause or justification." *Id.* at ¶ 20. Notwithstanding the claims in her Complaint, both Defendant Ferguson's requests to admit as well as the video of the incident reveal no contact between Defendant Ferguson and Plaintiff until she was on the floor. (Doc. 22-13 at 9.) As Defendant Ferguson did not have contact with Plaintiff until she was on the floor, his lack of personal involvement in the alleged assaults prevents him from being held liable for excessive force. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

To the extent Plaintiff advances a different factual claim against Defendant Ferguson in opposition to summary judgment, she may not amend her Complaint through her opposition brief. *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 Fed. App'x. 17, 20 (2d Cir. 2020) (finding that "a complaint may not be amended by advocating a different theory of liability in an opposition brief"); *Beckman*, 79 F. Supp. 2d at 407 ("[A]t the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant . . . it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (internal quotation marks omitted).

Because Defendant Ferguson cannot be held liable for excessive force without personal involvement in the alleged conduct, the court GRANTS his motion for summary

judgment as to Plaintiff's first cause of action to the extent it alleges he is liable for excessive use of force.

### F. Whether Defendant Ferguson is Entitled to Qualified Immunity for his Alleged Failure to Intervene.

Defendant Ferguson asserts that he is entitled to qualified immunity for his alleged failure to intervene. While a failure to intervene may be grounds for § 1983 liability, "[t]o recover on that ground, of course, a plaintiff must still overcome the hurdle of qualified immunity." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Further, the failure to intercede must be under circumstances making it objectively unreasonable for [an officer] to believe that his fellow officers' conduct did not violate those rights." *Ricciuti*, 124 F.3d at 129.

A police officer's conduct violates "clearly established law" only when it is clear that "every reasonable official would have understood that what he is doing violates that right." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012) (internal quotation marks omitted). Whether a defendant's conduct is objectively reasonable for qualified immunity purposes "is always a question of law for the court." *Gonzales v. Duran*, 590 F.3d 855, 864 (10th Cir. 2009); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (observing that if there are no "disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court").

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988). "In order for liability [for failure to intervene] to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). For

example, in *O'Neill,* the Second Circuit found that an officer witnessed other officers punching a handcuffed arrestee and then dragging him across the floor by his throat. *See O'Neill,* 839 F.2d at 12-13. The court determined that while the observing officer did not have enough time to intervene to prevent the punches, a disputed issue of fact existed as to whether the observing officer failed to intervene to prevent plaintiff from being dragged across the floor, because after "*[h]aving seen the victim beaten,* he was alerted to the need to protect [him] from further abuse." *Id.* at 12 (emphasis supplied).

"Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Sloley v. VanBramer,* 945 F.3d 30, 47 (2d Cir. 2019) (quoting *Terebesi v. Torreso,* 764 F.3d 217, 244 (2d Cir. 2014)); *see also Lennox v. Miller,* 968 F.3d 150, 158 (2d Cir. 2020) (summary judgment proper on the basis of qualified immunity where the defendant officer "had [no] realistic opportunity to intervene that he then disregarded"). "[W]hether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Figueroa v. Mazza,* 825 F.3d 89, 107 (2d Cir. 2016). "Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance." *Id.* (citation omitted).

As Defendant Lawton approached the holding cell, Defendant Ferguson followed instructions and went back to his computer to resume his paperwork. It is undisputed that Defendant Ferguson was not present in or outside of the holding cell at the time Defendant Lawton pushed and struck Plaintiff. *See Burwell v. Peyton,* 2015 WL 6874250, at *2 (D. Vt. Nov. 9, 2015) ("[Defendant], however, did not observe [the other officers] pepper spray and allegedly beat [p]laintiff, and therefore could not have protected [p]laintiff. Accordingly, he is not liable under § 1983 for failing to intervene.") He also played no role in taking her to the ground. The only remaining question is whether Defendant Ferguson may be held liable for failing to intervene in the interaction that he witnessed before Plaintiff was taken to the floor.

Defendant Ferguson was not present when Plaintiff moved quickly towards Defendant Lawton in the holding cell, nor did he observe Defendant Lawton push or strike Plaintiff. When Defendant Ferguson arrived outside of the holding cell, Defendant Koch was standing in the doorway and was between Defendant Ferguson and Plaintiff. Almost immediately, Defendants Lawton and Koch brought Plaintiff to the ground where she was restrained. Even if Defendants Lawton and Koch used excessive force in bringing Plaintiff to the ground, without knowing what preceded this action, Defendant Ferguson could not "reasonably have known that [Plaintiff's] constitutional rights were being violated." *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (citing *Ricciuti*, 124 F.3d at 129); *see also Baker v. Jiminian*, 2020 WL 3172700, at *5 (S.D.N.Y. June 15, 2020) (finding no liability for failure to intervene given delay in arrival, physical distance from the incident, and fact alleged assault occurred "in mere seconds").

No reasonable jury could conclude that Defendant Ferguson should have intervened to prevent Plaintiff from being pushed or struck (which Plaintiff tacitly concedes would not be possible) or that within a split second, with limited information as to what had transpired, and with an obscured view of the holding cell, he could have prevented her from being taken to the ground. *See O'Neill*, 839 F.2d at 11 (determining defendant lacked time to intervene to prevent blows to plaintiff where "[t]he three blows were struck in such rapid succession that [defendant] had no realistic opportunity to attempt to prevent them"); *see also Gauthier v. Kirkpatrick*, 2013 WL 6407716, at *17 (D. Vt. Dec. 9, 2013) (finding troopers who arrived on scene as plaintiff was being led to a police car while exclaiming his rights were being violated were entitled to qualified immunity because it was "not objectively unreasonable for the [t]roopers to believe that [the officers'] conduct did not violate [plaintiff's] rights").

Under the circumstances, there was no "realistic opportunity" for Defendant Ferguson to intervene to prevent the alleged violation of Plaintiff's constitutional rights. *Anderson*, 17 F.3d at 557. Defendant Ferguson is entitled to qualified immunity as a

matter of law. His motion for summary judgment as to the first cause of action to the extent it alleges a claim of failure to intervene against him is therefore GRANTED.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant Ferguson's motion for summary judgment (Doc. 22).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 13th day of January, 2022.

_____
Christina Reiss, District Judge
United States District Court